# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GERALD MICHAEL DILEO, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 09-2838** |
| **LAKESIDE HOSPITAL, INC., ET AL.** | **SECTION I/1** |

## ORDER AND REASONS

Before the Court is a motion to dismiss[1] filed by defendant, Medical Center of Baton Rouge, Inc. ("Lakeside").[2] Plaintiffs, Gerald Michael DiLeo, Linda Bartels DiLeo, and John Lucas DiLeo, III, oppose the motion. For the following reasons, the motion is **GRANTED**.

## *BACKGROUND*

John Lucas DiLeo, III ("Luke") was born at St. Tammany Hospital on February 14, 1984. Because Luke was born prematurely, he was transferred to Lakeside's neonatal intensive care unit.[3] Luke remained at Lakeside until he was discharged from its care on June 9, 1984.

Plaintiffs allege that, due to Luke's premature birth, Lakeside prescribed and administered E-ferol, a vitamin E supplement manufactured by Carter-Glogau Laboratories.[4] In April, 1984, the use of E-ferol was discontinued by the Food and Drug Administration ("FDA") because it caused serious complications including blindness, cerebral palsy, and death.[5] Plaintiffs allege that on April 12, 1984, the FDA informed Lakeside about the complications

---

[1] R. Doc. No. 21.
[2] The Medical Center of Baton Rouge was formerly known as Lakeside Hospital.
[3] R. Doc. No. 1, p. 2.
[4] R. Doc. No. 1, pp. 2-3.
[5] R. Doc. No. 1, p. 3.

1

associated with E-ferol and instructed Lakeside to inform all patients who had received E-ferol of the drug's complications.[6] Plaintiffs allege that although Luke received E-ferol and developed the complications associated with its use, Lakeside never informed them that he had received the drug.[7]

On May 11, 2004, a class action lawsuit was certified against the manufacturers of E-ferol in the United States District Court for the Northern District of Texas.[8] The opt out deadline for class members was September 11, 2006. Plaintiffs allege that attorneys associated with this class action contacted Lakeside in an effort to locate the plaintiffs.[9] Plaintiffs' complaint includes allegations that Lakeside informed the attorneys that Lakeside did not know how to reach the plaintiffs despite the fact that plaintiff, Gerald Michael DiLeo, Luke's father, was a doctor with staff privileges at Lakeside.[10]

Plaintiffs allege that they first learned that Luke had been treated with E-ferol sometime after March 12, 2008, when they were finally located by attorneys for the class action.[11] By the time plaintiffs learned of the lawsuit, the opt out deadline had passed.

Plaintiffs filed this lawsuit on February 20, 2009.[12] Plaintiffs argue that Lakeside's alleged concealment of Luke's E-ferol treatments prevented plaintiffs from: (1) seeking remedies within the prescription period against Lakeside, (2) filing a lawsuit against the drug manufacturer, and (3) opting out of the class action.[13] Plaintiffs base their claims on the Louisiana Unfair Trade Practices Act ("LUTPA").

---

[6] R. Doc. No. 1, pp. 3-4.
[7] R. Doc. No. 1, p. 4.
[8] R. Doc. No. 1, p. 4.
[9] R. Doc. No. 1, p. 4.
[10] R. Doc. No. 1, p. 4.
[11] R. Doc. No. 1, p. 5.
[12] R. Doc. No. 1.
[13] R. Doc. No. 1, p. 5.

In the instant motion to dismiss, Lakeside argues that plaintiffs' claims are perempted, that plaintiffs do not have standing to assert their claims, and that plaintiffs have not pleaded a valid cause of action under LUTPA.

## *STANDARD OF LAW*

A district court can dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929, 940 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)); Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007). This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. See Spivey v. Robertson, 197 F.3d 772, 774 (5th Cir. 1999); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. Spivey, 197 F.3d at 774; Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1974, 167 L. Ed. 2d at 949). "'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true' by a motion to dismiss." Id. (quoting Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations omitted).

## *DISCUSSION*

Louisiana Revised Statute § 51:1409(E) provides that LUTPA actions "shall be prescribed by one year running from the time of the transaction or act which gave rise to [the] right of action." La. R.S. § 51:1409(E).[14] Although the statute uses the word "prescribed," courts have interpreted this period to be peremptive rather than prescriptive. See Tubos de Acerco de Mexico v. American Int'l Investment Corp., Inc., 292 F.3d 471, 481 (5th Cir. 2002) (rehearing denied). The significance of this distinction is that peremption is not subject to suspension, interruption, or renunciation. Louisiana Division of Administration v. McInnis Bros. Constr., 701 So.2d 937, 939 (La. 1997). Further, "[t]he doctrine of *contra non valentum*, which suspends the running of prescription where the cause of action is not known or reasonably knowable by the plaintiff, is inapplicable to a peremptive period." Id.

According to plaintiffs, the peremptive period does not apply because Lakeside had a continuing obligation to disclose that Luke was treated with E-ferol, and that each day Lakeside failed to disclose that fact constituted a new LUTPA violation.[15] Plaintiffs contend that, under the continuing tort doctrine, peremption does not begin until the violation ceases.

"[T]he theory of a continuing tort has its roots in property damage cases and requires that the operating cause of the injury be a continuous one which results in continuous damages. Crump v. Sabine River Authority, 737 So.2d 720, 726 (La. 1999) (rehearing denied). "A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an

---

[14] Because LUTPA is penal in nature, it must be strictly construed. Canal Marine Supply, Inc. v. Outboard Marine Corp., 522 So.2d 1201, 1203 (La.App. 4 Cir. 1988).
[15] R. Doc. No. 26, p. 9. The Court renders no opinion as to whether Lakeside actually had an affirmative, ongoing, duty to disclose.

4

original, wrongful act." Id. at 728. The operating cause of the injury must be a continuous one which results in continuous damages. Id. at 726. The mere failure to remedy a wrong does not constitute a continuing tort. Terrebonne Parish School Board v. Mobil Oil Corp., 310 F.3d 870 (5th Cir. 2002).

The Fifth Circuit has held that the continuing tort doctrine does apply to actions pursuant to LUTPA. Tubos de Acerco de Mexico, 292 F.3d at 481-82; but see Glod v. Baker, 899 So.2d 642, 649 (La.App. 3 Cir. Mar. 23, 2005) (discussing Tubos but holding that because the LUTPA limitations period is peremptive and not prescriptive, the continuing tort doctrine does not apply).[16]

Plaintiffs argue that Lakeside's non-disclosure constitutes a continuing violation of the LUTPA. For plaintiffs to prove a continuous tort, however, plaintiffs must prove not only a continuous violation, but also continuous damage. See Crump, 737 So.2d at 726. Plaintiffs' contend they were damaged by Lakeside's alleged nondisclosure because they were prevented from suing the hospital or drug manufacturer within the prescription period and that they were prevented from opting out of the class action lawsuit.[17]

Assuming, without deciding, that Lakeside's obligation to plaintiffs' extended beyond their last contact in 1984, plaintiffs' claim would still be perempted. The opt out deadline for the class action lawsuit was September 11, 2006.[18] Plaintiffs have not identified, either in their opposition or their original or amended complaints, how Lakeside's nondisclosure has caused

---

[16] The Court is aware that a split of authority exists among Louisiana courts as to the categorical applicability of the continuing tort doctrine to LUTPA claims. Because this Court finds that plaintiff has not sufficiently demonstrated a continuing tort, the Court need go no further.
[17] Plaintiffs original complaint also contains allegations that Luke suffered acute physical pain and mental anguish, inability to work, loss of earnings, and medical expenses. R. Doc. No. 1, pp. 6-7. Plaintiffs' complaint contains no allegations that link these alleged damages with Lakeside's nondisclosure rather than possible malpractice on the part of Lakeside. Any malpractice claims are expressly disavowed by plaintiffs in their complaint. R. Doc. No. 1, p. 6. To the extent that plaintiffs argue that these damages could have been recovered in a lawsuit against Lakeside or other parties, that argument is foreclosed by the Court's conclusion below.
[18] R. Doc. No. 1.

5

any additional injury to them since that date. To constitute a continuous tort, the violation must give rise to successive damages. See Capitol House Preservation Company, L.L.C. v. Perryman Consultants, Inc., 745 So.2d 1194, 1197 (La.App. 1 Cir. Nov. 5, 1999) ("Capitol House II") (citing South Central Bell Telephone Co. v. Texaco, 418 So.25 531, 533 (La. 1982)). Any damages incurred by plaintiff due to Lakeside's failure to act were incurred on or before September 11, 2006.

Plaintiffs cite Capitol House Preservation Co. for the principle that each day a defendant fails to comply with a duty to disclose, defendant has committed a new violation of LUTPA.[19] The Court first notes that the defendants in that case were under an express, ongoing, statutory duty to disclose violations of the Louisiana law governing riverboat gambling. See Capitol House Preservation Co. L.L.C. v. Perryman Consultants, Inc., 725 So.2d 523, 528 (La.App. 1 Cir. Dec. 10, 1998) ("Capitol House I").

Most relevant to this case, however, is that the plaintiff in Capitol House I alleged that the defendants' failure to disclose continued to cause damage to the plaintiff. See Id. at 530. In that case, the State of Louisiana created a statutory scheme that granted a fixed and limited number of licenses to operate riverboat gambling boats. The plaintiff alleged that the defendants failure to disclose caused new harm to the plaintiff each day because each day was another day that plaintiff was unable to gain access to the limited number of licenses. The court noted that plaintiff would still have to prove at trial that plaintiff would have received the license had the violations been disclosed. Here, unlike the plaintiff in Capitol House, the DiLeos have not alleged any new damage since September 21, 2006, that has resulted from Lakeside's failure to disclose.

---

[19] R. Doc. No. 26, p. 10.

When the Louisiana legislature enacted LUTPA, it created a fixed "time period in which [the] newly created right must be exercised." Canal Marine Supply, 522 So.2d at 1203. Plaintiffs filed this lawsuit more than twenty years after the incident that precipitated it. More than two years passed between the opt out deadline for the class action lawsuit and plaintiffs' filing of this action. Although plaintiffs argue that they have pleaded a continuing violation, they ignore the fact that they have not alleged any continuing damages caused by an act or failure to act of the defendant.

"[T]he breach of the duty to right a wrong and make the plaintiff whole simply cannot be a continuing wrong which suspends the running of prescription." Crump 737 So.2d at 729. Because plaintiffs have not alleged any "successive damages" caused by Lakeside in the one year prior to the filing of their lawsuit, plaintiffs claims are perempted.[20]

### *CONCLUSION*

For the reasons stated above,

**IT IS ORDERED** that the motion to dismiss filed by the defendant is **GRANTED** and that plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, February 12, 2010.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[20] Because of this Court's ruling with respect to the peremption issue, the Court does not reach the defendant's other arguments with respect to plaintiffs' standing or the applicability of LUTPA to defendant's conduct.